IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 21-cv-03026-PAB

TRACY MCLAUGHLIN,

Plaintiff,

v.

GARY HUGHES,
LORI HUGHES,
HUGHES FAMILY REVOCABLE TRUST, and
777 CLUB, LLC,

Defendants.

**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION**

This matter is before the Court on Plaintiff's Motion for Preliminary Injunction (Doc. # 9). The Court has jurisdiction pursuant to 28 U.S.C. § 1332. Plaintiff Tracy McLaughlin ("Plaintiff McLaughlin") asks the Court to issue a preliminary injunction enjoining defendant Hughes Family Revocable Trust ("Defendant Trust") from evicting Plaintiff McLaughlin from a duplex unit at 743 Cemetery Lane, Aspen Colorado (the "Property"). (Doc. # 9, p. 2). For the following reasons, Plaintiff McLaughlin's request for a preliminary injunction is denied.

I.   **BACKGROUND**

This matter arises from Plaintiff McLaughlin's attempt to buy and construct a home on the Property. (Doc. # 9, p. 1).

A.    PARTIES AND CLAIMS

Plaintiff McLaughlin has a contract to buy, and currently occupies, the Property. (Doc. # 1, p. 1). Defendant Trust owns the Property. (Doc. # 9, p. 2). Defendants Lori and Gary Hughes are the sole trustees of the Defendant Trust. *Id.* Defendant 777 Club, LLC ("777 Club") is the owner of the adjacent duplex unit, 745 Cemetery Lane ("Adjacent Unit"). (Doc. # 1, p. 2).

In 1979, a Condominium Declaration ("1979 Declaration") was recorded in Pitkin County, Colorado that covered both the Property and the Adjacent Unit. (Doc. # 9, ¶ 6). The 1979 Declaration included a right of first refusal applicable to both units that obligated each owner to give to the other owner written notice of any offer to buy the others unit. (Doc. # 9, ¶ 7). The non-selling owner would then have the right to purchase the other unit under the same terms and conditions as set forth in the offer. (Doc. # 9, ¶ 7).

In 2018, Defendants Trust and 777 Club planned to redevelop the Property and Adjacent Unit and recorded a declaration ("2018 Declaration") to supplement the 1979 Declaration. (Doc. # 9, ¶ 10). The 2018 Declaration did not include a right of first refusal, nor did it address the right of first refusal in the 1979 Declaration. (Doc. # 9, ¶ 10).

In 2019, Defendant Trust abandoned its plan to jointly redevelop the Property with the 777 Club and instead, listed the Property for sale. (Doc. # 9, ¶ 3). On February 19, 2020, Plaintiff McLaughlin and Defendant Trust entered into a contract pursuant to which RWWG Corporation, Plaintiff McLaughlin's company, agreed to purchase the Property. (Doc. # 9, ¶ 4). In March of 2020, RWWG Corporation assigned its rights

under the Contract to Plaintiff McLaughlin and the Contract was amended ("March 2020 Amendment") to allow Plaintiff McLaughlin to take over construction on the Property prior to closing. (Doc. # 9, ¶¶ 12-13; Docs. ## 9-5 and 9-6). Plaintiff McLaughlin alleges that in March 2021, Title Company of the Rockies provided her counsel with an updated title commitment which indicated that the right of first refusal was no longer in effect. (Doc. # 9, ¶ 14). Plaintiff McLaughlin does not include this title commitment in her motion.

In June 2021, a new title examiner issued a title commitment which required compliance with the right of first refusal for the title policy. (Doc. # 9, ¶ 15; Doc. #9-8). On June 28, 2021, in response to the new title commitment Plaintiff McLaughlin and Defendant Trust amended their contract ("June 28, 2021 Amendment"). (Doc. # 9, ¶ 15). The June 28, 2021 Amendment provided that Plaintiff McLaughlin could possess the property from June 30, 2021, until she could "legally occupy the Property or until closing." (Doc. # 9, ¶ 16 (quoting Doc. 9-9, § 4.1)). Under the terms of the June 28, 2021 Amendment, Plaintiff McLaughlin was required to pay $25,000 per month in 90-day installments to the Trust as rent for the Property, and on closing these payments were to be applied to reduce the purchase price of the Property. (Doc. # 9, ¶ 16). The June 28, 2021 Amendment also required Defendant Trust to resolve the right of first refusal title issue prior to closing. (Doc. # 9, ¶ 16). The June 28, 2021 Amendment further provided that the terms of the Contract would be extended until the conditions were resolved by the parties. (Doc. # 9, ¶ 16).

On June 29, 2021, Robert Winchester, on behalf of Defendant 777 Club, filed a certificate of Non-Compliance in Pitkin County claiming that his right of first refusal had not been complied with. (Doc. # 9, ¶ 15). The Defendant Trust placed $250,000 in escrow to defend against any lawsuits filed within one year of closing challenging title for the property. (Doc. # 9, ¶ 17). In August 2021, the Trust filed a petition seeking to declare the Certificate of Non-Compliance invalid in Pitkin County Court. (Doc. # 9, ¶ 19; *see also* Doc. # 9-12). The District Court for Pitkin County denied the Trust's petition and defendant has appealed that decision. (Doc. #9, ¶ 19; *see also* Docs. ## 9-12, 9-13, 9-14).

On July 19, 2021, Defendant Trust asked Plaintiff McLaughlin to close by July 30, 2021. (Doc. # 9, ¶ 17; *see also* Doc. # 9-11). Defendant Trust repeated this request on September 30, 2021, requesting that Plaintiff McLaughlin close in ten days. (Doc. # 9, ¶ 20; *see also* Doc. # 9-15). Defendant Trust asserts that Plaintiff McLaughlin's failure to close on the property has terminated the Amended Contract and that Defendant Trust has performed sufficiently under the terms of the Amended Contract. (Doc. # 9-17). Plaintiff McLaughlin asserts that Defendant Trust has breached the Contract by failing to perform its obligations thereunder. (Doc. # 9, ¶¶ 21-22). On November 8, 2021, Defendant Trust served Plaintiff McLaughlin with a notice to quit asking her to leave the property by November 30, 2021. (Doc/ # 9, ¶ 21).

In response, Plaintiff McLaughlin filed this action asserting claims for:

1. Breach of Contract and Unjust Enrichment against Defendant Trust;

    2. Fraudulent Misrepresentation, Negligent Misrepresentation and Fraudulent Concealment against Defendants Gary and Lori Hughes;

    3. Tortious Interference with a contract against Defendant 777 Club; and

    4. Declaratory Judgment against Defendant Trust and Defendant 777 Club. (Doc. # 1, p. 4).

## B. PLAINTIFF'S PRELIMINARY INJUNCTION MOTION

Plaintiff McLaughlin filed this lawsuit on November 9, 2021. (Doc. # 1). Six days later, on November 15, 2021, Plaintiff McLaughlin filed a Motion for a Preliminary Injunction ("Motion"), against Defendant Trust seeking an order enjoining Defendant Trust from evicting her from the Property. (Doc. # 1, p. 2). Defendant Trust filed its Response and Opposition to Plaintiff's Motion on November 22, 2021 ("Defendant Trust's Response").

## II. LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy, the exception rather than the rule." *Free the Nipple-Fort Collins v. City of Fort Collins, Colorado*, 916 F.3d 792, 797 (10th Cir. 2019) (quoting *U.S. ex rel. Citizen Band Potawatomi Indian Tribe of Oklahoma v. Enter. Mgmt. Consultants, Inc.*, 883 F.2d 886, 888 (10th Cir. 1989)). Preliminary injunctions are intended to serve a limited purpose: "to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 396 (1981). Thus, injunctive relief should be granted only when the moving party clearly and unequivocally demonstrates that such relief is necessary. *See Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005). A party

seeking a preliminary injunction must show: (1) the movant is substantially likely to succeed on the merits; (2) the movant will suffer irreparable injury if the injunction is denied; (3) the movant's threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest. *Fish v. Kobach*, 840 F.3d 710, 723 (10th Cir. 2016).

### III.     ANALYSIS

#### A. IRREPARABLE HARM[1]

In considering a motion for an injunction, the Court begins by considering whether Plaintiff McLaughlin has established that she will suffer irreparable injury if the injunction is denied. It is well-established that "a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004). Therefore, "the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered." *Id*. (quoting *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir. 1990)). Accordingly, if the movant fails to meet its burden of establishing irreparable injury,

---

[1] In its response to Plaintiff McLaughlin's motion, Defendant Trust urges the Court to deny injunctive relief in this case because the Court lacks jurisdiction under the Anti-Injunction Act and the *Younger* abstention doctrine. (Doc. # 19, p. 1). The Anti-Injunction Act prohibits the Court from enjoining state courts or private parties enforcing decisions of state courts. *U.S. v. Billingsley*, 615 F.3d 404, 409 (5th Cir. 2010). The *Younger* abstention doctrine similarly prevents the Court from interfering with some state court proceedings. *Younger v. Harris*, 401 U.S. 37, 43-44 (1971). It is not clear from the facts whether the Anti-Injunction Act is applicable, as Plaintiff McLaughlin does not seek to enjoin a state court or to defy a ruling from a state court. The *Younger* doctrine is also not clearly applicable and so the Court declines to address those arguments because the motion can be denied on its merits.

courts "need not address the remaining preliminary injunction factors." *N.M. Dep't of Game and Fish v. U.S. Dep't of the Interior*, 854 F.3d 1236, 1249 (10th Cir. 2017) (citing *People for the Ethical Treatment of Prop. Owners v. U.S. Fish and Wildlife Serv.*, 852 F.3d 990, 1008 (10th Cir. 2017) ("If it is not necessary to decide more, it is necessary not to decide more.")); *see also Conry v. Estate of Barker*, No. 14-cv-02672-CMA-KLM, 2017 WL 5952709, at *1 (D. Colo. 2017) (same).

"A plaintiff suffers irreparable injury when the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain." *Awad v. Ziriax*, 670 F.3d 1111, 1131 (10th Cir. 2012) (quoting *Dominion*, 269 F.3d at 1156). The party seeking injunctive relief must show that the harm is certain as opposed to theoretical, great, and "of such imminence that there is clear and present need for equitable relief." *Schrier v. Univ. of Colo.*, 427 F.3d at 1267 (emphasis added); *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1190 (10th Cir. 2003).

Plaintiff McLaughlin argues that she will face irreparable injury for two reasons. First because the loss of a specific piece of property is "always an irreparable injury" and "the Property is especially unique because [Plaintiff McLaughlin] spent significant amounts of her own time and money designing and building the Property." (Doc. # 9, p. 13). Second, Plaintiff McLaughlin claims a wrongful eviction would specifically create an irreparable injury. *Id.* Although Colorado recognizes that land is unique and that a loss of land is an irreparable injury, Plaintiff McLaughlin has not demonstrated that she will permanently lose the Property if this injunction is not granted. *See Sportsmen's Wildlife*

*Defense Fund v. U.S. Dept. of the Interior*, 949 F. Supp. 1510, 1523 (D. Colo. 1996); *Benson v. Nelson*, 725 P.2d 71, 72 (Colo. App. 1986). Even if evicted, Plaintiff McLaughlin could still prevail on her claim for specific performance of her contract with Defendant Trust, as requested in her complaint, allowing her to purchase the Property. (*See* Doc. # 1, ¶ 136). Plaintiff McLaughlin also cites to cases which find that an eviction does result in irreparable injury. (Doc. # 9, p. 13). Not only are the holdings in these cases non-binding on this Court, but these cases also involve more extreme circumstances than that present in this case, e.g., plaintiffs losing their home of many years or permanently losing their primary residence in a foreclosure. *See Johnson v. Macy*, 145 F. Supp. 3d 907, 920 (C.D. Cal. 2015) (finding irreparable injury where plaintiff was to be evicted from her home of fifteen years and potentially made homeless); *Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Tr.*, 636 F.3d 1150, 1159 (9th Cir. 2011) (finding irreparable injury where a landlord threatened to evict tenants and raise rent beyond their ability to pay for housing); *Sundance Land Corp. v. Cmty. First Fed. Sav. & Loan Ass'n*, 840 F.2d 653, 661 (9th Cir.1988) (finding irreparable injury in the case of foreclosure).

Moreover, when and if eviction proceedings are commenced in state court, Plaintiff McLaughlin can litigate those claims to prevent an eviction without an injunction. Finally, the Court rejects Plaintiff McLaughlin's assertion that an eviction would cause irreparable injury because Defendant Trust could "sell or rent the Property to an innocent third party." Plaintiff McLaughlin can easily protect her interests in the property

until the litigation is resolved by filing a notice of Lis Pendens as described in Colo. R. Civ. P. 105. (Doc. # 9, p. 13).

The Court finds that Plaintiff McLaughlin has failed to meet her burden of establishing irreparable injury and, as such, the Court "need not address the remaining preliminary injunction factors." *N.M. Dep't of Game and Fish* 854 F.3d at 1249 (10th Cir. 2017).

## IV.   CONCLUSION

For the foregoing reasons this Court concludes that Plaintiff McLaughlin has failed to demonstrate that it will suffer irreparable harm if an injunction is not issued. Therefore, the Motion for a Preliminary Injunction (Doc. # 9) is DENIED.

DATED: November 24, 2021

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge